# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDWARD L. WARKEVICZ, | : | No. 4:15-cv-01922 |
| | : | |
| Plaintiff, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| BERWICK AREA SCHOOL | : | |
| DISTRICT, MARYANN | : | |
| KOVALEWSKI, DANIEL | : | |
| MCGANN, WILLIAM | : | |
| MCLAUGHLIN, RON ROBSOCK, | : | |
| and SUZY WIEGAND, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM

## July 14, 2016

Plaintiff initiated this obscure action with a correspondingly sparse complaint. As the Court attempted to wade through Plaintiff's murky and often discontinuous recounting of the events that gave rise to this litigation, it shortly became evident that Plaintiff had failed to allege sufficient factual matter to establish a plausible entitlement to relief as a matter of law.

- 1 -

Further obstructing Plaintiff's path to relief, a careful examination of this action's <u>dramatis personae</u> quite plainly reveals to any reasonable onlooker that the public officials implicated herein enjoy either qualified or absolute immunity as to each of the claims asserted against them—forms of immunity, which I note from the outset, promote the vitality of democratic rule by minimizing judicial second-guessing through lawsuits like this one.

As such, and in accordance with the decisions of the Supreme Court of the United States in <u>Bell Atlantic Corp. v. Twombly</u> and <u>Ashcroft v. Iqbal</u>, as well as that of the United States Court of Appeals for the Third Circuit in <u>Connelly v. Lane Construction Corp.</u>, Defendants' motion to dismiss is granted in whole.[1] Importantly, because I have also determined that, as a matter of law, amendment would be futile, the motion is granted with prejudice, and the courthouse doors will consequently be closed to any further attempt by Plaintiff to pursue this action in federal court.

---

[1]   550 U.S. 544 (2007); 556 U.S. 662 (2009); 809 F.3d 780 (3d Cir. 2016).

## I.     BACKGROUND

"Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still—as we have already emphasized—assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them."[2] Plaintiff's complaint here is so inartfully drafted that distillation of fact from legal opinion has been rendered exceedingly difficult. The complaint, for instance, lacks any semblance of a sound factual basis or perceptible timeline for the events in question. Nevertheless, as demanded by prevailing law, this Court has endeavored to discern the complaint's factual allegations and thereafter, to cast them in the light most favorable to the Plaintiff.

### A.     The Berwick Area School District's board allegedly excludes Plaintiff from district property on June 25, 2015.

The Berwick Area School District (hereinafter "the District") is a public school district that spans portions of both Columbia and Luzerne

---

[2]     <u>Connelly v. Lane Const. Corp.</u>, 809 F.3d 780, 790 (3d Cir. 2016) (Jordan, J.).

- 3 -

Counties. According to the complaint, on June 25, 2015, the District's school board "purported to exclude and bar Plaintiff from all real estate, property, buildings, stadiums, fields and any other location, owned, operated or controlled by the District, effective immediately."[3] The individual Defendants—Maryann Kovalewski, Daniel McGann, William McLaughlin, Ron Robsock, and Suzy Wiegand—apparently are the five school board directors who voted to exclude Plaintiff.[4] Plaintiff fails to provide any further meaningful facts about the June 25, 2015 board meeting.[5]

---

[3]   Pl.'s Compl., ECF No. 1 at 5 ¶ 20.

[4]   Id. at ¶ 23.

[5]   Although unclear from the text of Plaintiff's complaint, Plaintiff had apparently come under fire by the District's school board in 2015 as a result of his purported involvement as a high school football "booster" and his alleged connections to the late George Curry, the District's then head football coach and the winningest coach in Pennsylvania high school football history. In recent years, the District has found itself in the heart of an investigation by the District II Athletic Committee for the Pennsylvania Interscholastic Athletic Association (PIAA), which examined whether male student-athletes residing outside of the District's geographic bounds were improperly "recruited" to play football for the District's high school football team. The District's recruitment scandal, rumored expansive in both temporal and geographic scope, ultimately resulted in a brief suspension of the program as well as the PIAA's District II Athletic Committee rescinding the eligibility of

"The District thereafter informed Plaintiff that should he attempt to be physically present at any such location, that it had informed and instructed the local law enforcement officials to immediately remove him and consider him as a trespasser."[6] According to Plaintiff, the area from which he was excluded "includes property to which the general public is invited without limitation for purposes of assembly, including, but not limited to, school buildings, stadiums and fields."[7] Moreover, Plaintiff notes that "Defendants acted to exclude Plaintiff from all District property

---

several of the District's high school football players in 2015. See, e.g., Cam Smith, Powerful Pennsylvania Football Program Berwick Suspended for Two Weeks during Investigation, USA Today: High School Sports, May 13, 2015, at http://usatodayhss.com/2015/powerful-pennsylvania-football-program-berwick-suspended-for-two-weeks-during-investigation; Berwick Football Players Ruled Ineligible by District 2 Committee, The Citizens' Voice, June 24, 2015, at http://citizensvoice.com/sports/berwick-football-players-ruled-ineligible-by-district-2-committee-1.1903064; Steve Bennett, Berwick Football Supported Banned from Program, The Times-Tribune, June 26, 2015, at http://thetimes-tribune.com/sports/berwick-football-supporter-banned-from-program-1.1904100. See also ECF No. 8 Exs. 1–4. Although inessential to my determination here, for a complete discussion of a district court's ability to consider documents that are external to the complaint, yet critical to the underlying claim, without converting a motion to dismiss into one for summary judgment, see Part III.A, infra.

[6]  Id. at ¶ 21.

[7]  Id. at 5–6 ¶ 24.

without any form of due process or hearing prior to the deprivation."[8]
Plaintiff's June 25, 2015 exclusion was subsequently reiterated by the
District's school board on September 14, 2015.[9] He alleges that he
requested a hearing from the District, which request has not yet been
granted.[10] No further details as to Plaintiff's ban have been pled.

As a consequence, Plaintiff alleges that "the Defendants have denied
to Plaintiff his rights of assembly and access to public places and his
privileges and immunities as guaranteed to him under the First, Fifth and
Fourteenth Amendments of the United States Constitution."[11] Counts I
through IV of Plaintiff's complaint each pertain, in somewhat overlapping
fashion, to these alleged constitutional deprivations.

**B.** **Plaintiff claims that Defendants' conduct during the June 25, 2015 and September 14, 2015 school board meetings constituted intentional infliction of emotional distress, slander, and false light invasion of privacy.**

---

[8]  Id. at 5 ¶ 23.

[9]  Id. at 7 ¶¶ 34–35.

[10]  Id. at ¶ 39.

[11]  Id. at ¶ 40.

Plaintiff alleges that the following three comments were made by Defendant Kovalewski in reference to Plaintiff during the course of the June 25, 2015 and September 14, 2015 meetings:

1.   "[He] may or may not be out there playing Jerry Maguire."[12]

2.   "[He] maybe [sic] using kids as pawns."[13]

3.   "It reminded me in a different way of Kids for Cash, and I have no tolerance for that."[14]

4.   "He's a shadowy figure."[15]

In connection with these comments, Plaintiff writes that "[t]he Defendants caused such publicity to be printed and circulated in local newspapers and through other media and means."[16] Plaintiff has failed to plead precisely how Defendants caused such publication or in what capacity such statements were ultimately publicized. Moreover, Plaintiff contends that "[t]he Defendants knew that such allegations regarding Plaintiff were false or, in the alternative, acted with extreme recklessness as

---

[12]   Id. at 6 ¶ 27.

[13]   Id. at ¶ 28.

[14]   Id. at ¶ 29.

[15]   Id. at 7 ¶ 37.

[16]   Id. at 6 ¶ 30.

to their falsity."[17] Alternatively, Plaintiff writes that "the individual

Defendants deliberately created the context and impression by which the

action taken and the false report were disseminated."[18] According to

Plaintiff, such comments "created publicity casting [him] in a notoriously

negative light."[19]

According to the complaint and as will become relevant later on,

"Plaintiff is engaged in the business of providing insurance services to

individuals and businesses of the general public in northeastern

Pennsylvania." [20] He "does business under the name of Ed Warkevicz

Insurance Services."[21] "On account of aforesaid deprivation and the

publicity given to it by the Defendants," Plaintiff contends that the "has

lost business, revenue and profit from his insurance business on account of

customers declining to do business with him."[22] As a result, Plaintiff has

---

[17]   Id. at ¶ 31.

[18]   Id. at ¶ 32.

[19]   Id. at 7 ¶ 38.

[20]   Id. at 2 ¶ 6.

[21]   Id.

[22]   Id. at 8 ¶ 43.

also filed Counts V through VII, which allege intentional infliction of emotional distress, slander, and false light invasion of privacy, respectively.

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may file a motion to dismiss for "failure to state a claim upon which relief can be granted." Such a motion "tests the legal sufficiency of a pleading" and "streamlines litigation by dispensing with needless discovery and factfinding."[23] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[24] This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[25]

---

[23]  In re Hydrogen Peroxide Litigation, 552 F.3d 305, 316 n.15 (3d Cir. 2008) (Scirica, C.J.) (quoting Szabo v. Bridgeport Machines, Inc., 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)). Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).

[24]  Neitzke, 490 U.S. at 326 (citing Hishon v. King & Spalding, 467 U. S. 69, 73 (1984)).

[25]  Neitzke, 490 U.S. at 327.

Beginning in 2007, the Supreme Court of the United States initiated what some scholars have termed the Roberts Court's "civil procedure revival" by significantly tightening the standard that district courts must apply to 12(b)(6) motions.[26] In two landmark decisions, <u>Bell Atlantic Corporation v. Twombly</u> and <u>Ashcroft v. Iqbal</u>, the Roberts Court "changed . . . the pleading landscape" by "signal[ing] to lower-court judges that the stricter approach some had been taking was appropriate under the Federal Rules."[27] More specifically, the Court in these two decisions "retired" the lenient "no-set-of-facts test" set forth in <u>Conley v. Gibson</u> and replaced it with a more exacting "plausibility" standard.[28]

Accordingly, after <u>Twombly</u> and <u>Iqbal</u>, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[29] "A claim has

---

[26]  Howard M. Wasserman, <u>The Roberts Court and the Civil Procedure Revival</u>, 31 Rev. Litig. 313 (2012).

[27]  550 U.S. 544 (2007); 556 U.S. 662, 678 (2009). Wasserman, <u>supra</u> at 319–20.

[28]  <u>Iqbal</u>, 556 U.S. at 670 (citing <u>Conley v. Gibson</u>, 355 U.S. 41 (1957)) ("[a]cknowledging that <u>Twombly</u> retired the <u>Conley</u> no-set-of-facts test").

[29]  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[30] "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."[31] Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[32]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[33] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

---

[30]  Iqbal, 556 U.S. at 678.

[31]  Connelly v. Lane Const. Corp., 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[32]  Twombly, 550 U.S. at 556.

[33]  Iqbal, 556 U.S. at 679.

'stops short of the line between possibility and plausibility of entitlement to relief.'"[34]

When disposing of a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff]."[35] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[36] "After Iqbal, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss."[37] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[38]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must

---

[34] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557 (internal quotations omitted)).

[35] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[36] Iqbal, 556 U.S. at 678 (internal citations omitted).

[37] Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.).

[38] Iqbal, 556 U.S. at 678.

take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[39]

## III.    ANALYSIS

Plaintiff's claims are unsupported by law and barred by the doctrines of qualified and absolute immunity. Accordingly, I am of the opinion that Plaintiff's complaint entirely lacks merit. Further, because I find that subsequent amendment would be futile, Defendants' motion to dismiss is granted with prejudice.

### A.    Plaintiff's Constitutional Rights Were Not Violated.

The whole of Plaintiff's complaint is that his exclusion from District property without a formal hearing "was in violation of his rights of assembly, travel, speech and association as guaranteed by the First, Fifth, and Fourteenth Amendments of the United States Constitution."[40] However, established law in this and other circuits is exactly to the

---

[39]   Connelly, 809 F.3d at 787 (internal quotations and citations omitted).

[40]   ECF No. 1 at 8 ¶ 46.

contrary: to ensure the safety and wellbeing of a school district's

constituents, removal or exclusion of a member of the public from school

district property without a hearing does not violate a constitutional right

and consequently is not so actionable.

In Cole v. Montague Board of Education, for example, the United

States Court of Appeals for the Third Circuit considered allegations that

the appellants had been removed and permanently banned from school

property without prior hearing.[41] The Third Circuit affirmed the district

court's decision to grant judgment on the pleadings in favor of the

defendants.[42] The court wrote that "[a]s to the claim that the School Board

violated the Coles' due process rights by 'illegally' banning them from

school property, this contention plainly lacks merit."[43] According to the

Third Circuit, prohibition of an individual from school grounds violated

---

[41]   Cole v. Montague Bd. of Educ., 145 F. App'x 760, 761 (3d Cir. 2005).

[42]   Id.

[43]   Id. at 762. The Court reminds Plaintiff that Fed. R. Civ. P. 11(b) mandates that
       an attorney conduct "an inquiry reasonable under the circumstances" into the
       law and facts prior to certification and filing in Federal Court.

no constitutional provision.[44] "Therefore," the Third Circuit assured, "the

District Court applied the correct law in granting the School Board's

motion for judgment on the pleadings."[45]

For support, the Third Circuit relied upon and directly quoted

Lovern v. Edwards, a decision by the United States Court of Appeals for

the Fourth Circuit. In Lovern, the Fourth Circuit affirmed the district

court's dismissal of a constitutional case brought by an individual who

had been denied entry onto school property.[46] The Fourth Circuit

explained, in a passage also reiterated by the Third Circuit in Cole, that

"[s]chool officials have the authority to control students and school

personnel on school property, and also have the authority and

responsibility for assuring that parents and third parties conduct

themselves appropriately while on school property."[47] The Fourth Circuit

went on to unequivocally explain that "[w]hile the specific contours of the

---

[44]   See id.

[45]   Id. at 763.

[46]   190 F.3d 648, 655 (4th Cir. 1999).

[47]   Id.

authority and responsibility of school officials are defined by state law,

such officials should never be intimidated into compromising the safety of

those who utilize school property."[48]

As a result, the Fourth Circuit in <u>Lovern</u> concluded that the

constitutional claims alleged were "plainly insubstantial and entirely

frivolous," because "assertions that school administrators must provide

him with boundless access to school property are obviously without

merit."[49] In fact, due to the frivolousness of the constitutional claims, the

Fourth Circuit even went one step further, affirming the district court's

decision to dismiss the case entirely from federal court for lack of subject

matter jurisdiction, noting that "this case is a monument to what ought not

to be in a federal court."[50]

To review another example of federal courts having denied outright

claims like those alleged here, the United States District Court for the

Eastern District of Pennsylvania in <u>Henley v. Octorara Area School</u>

---

[48]  <u>Id.</u>

[49]  <u>Id.</u> at 656 (internal quotation marks and citation omitted).

[50]  <u>Id.</u>

District, wrote that "[t]he equal protection clause of the Constitution does

not preclude public school authorities from making reasonable

classifications and enforcing reasonable conditions . . . to come onto or use

public school property."[51]  "Reasonable classifications that do not infringe

on other recognized rights such as freedom of speech and are not invidious

classifications such as those based on race, political views, or religious

affiliations, are constitutionally permissible."[52]

In Henley, the court reasoned that "school authorities had the right

to exclude [the plaintiff] from coming onto the school property,

considering that [he] had engaged in criminal activities involving school

students including a criminal conspiracy with Octorara Area High School

students."[53] "Certainly the classification excluding [the plaintiff] had a

rational basis and was reasonable."[54] Moreover, the district court explained

that "[t]he right to come onto the school property was not such a right as

---

[51]   701 F. Supp. 545, 551 (E.D. Pa. 1988).

[52]   Id.

[53]   Id.

[54]   Id.

to require any sort of a due process hearing before making the

classification that excluded [him]."[55]

Consequently, the instant case, like Henley, merits no other foreseeable

conclusion faithful to the law than outright dismissal of Plaintiff's

constitutional counts.[56]

In light of the Henley decision, and in support of their motion to

dismiss, Defendants have appended various exhibits, including the school

board's meeting minutes, which they suggest are documents central to

complaint that therefore may be considered on a motion to dismiss

without converting it into a motion for summary judgment.[57] Although I

would note that consideration of these external documents was inessential

to my ultimate determination, were I to reach this particular issue, I would

---

[55] Id.

[56] Though federal question and supplemental jurisdiction seem to be appropriate on the face of this action, Plaintiff fails to address the jurisdictional argument advanced by the Fourth Circuit in Lovern. That is to say, given the evident deficiencies of the anchor claims here (Plaintiff's constitutional claims), it is quite likely that Plaintiff would plainly lack subject matter jurisdiction to continue litigation in this Court were any state-law claims to survive.

[57] ECF No. 8 Exs. 1–4.

be inclined to agree with the Defendants that such documents could be

considered at the pleading stage in this case.

In <u>Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.</u>, the

leading decision on the issue of consideration of external documents at the

motion to dismiss stage, the Third Circuit instructed as follows:

> We now hold that a court may consider an undisputedly
> authentic document that a defendant attaches as an exhibit to
> a motion to dismiss if the plaintiff's claims are based on the
> document. Otherwise, a plaintiff with a legally deficient claim
> could survive a motion to dismiss simply by failing to attach a
> dispositive document on which it relied.[58]

Further, according to the Third Circuit, "a document integral to or

explicitly relied upon in the complaint may be considered without

converting the motion to dismiss into one for summary judgment."[59] This

is because "the primary problem raised by looking to documents outside

the complaint—lack of notice to the plaintiff—is dissipated [w]here the

plaintiff has actual notice . . . and has relied upon these documents in

---

[58]   998 F.2d 1192, 1196 (3d Cir. 1993) (Cowen, J.) (internal citations omitted).

[59]   <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir. 2014) (internal citations and
       quotations omitted) (emphasis in original).

framing the complaint."[60] "[W]hat is critical is whether the claims in the complaint are based on an extrinsic document and not merely whether the extrinsic document was explicitly cited."[61]

Plaintiff contends, rather opaquely in opposition, that it would be inappropriate to consider Defendants' documents—documents that illuminate the actual events underlying the action, a chain of events that Plaintiff and his counsel apparently believe can remain shrouded in mystery so long as they have been concealed by a vague pleading.

This Court has finite resources to expend on each case, and consequently, comparably little tolerance for less-than-forthright approaches.[62] Where a plaintiff's claims are defunct from the get-go, this Court will have no part in aiding and abetting his efforts to conceal their

---

[60]   Id. (internal citations and quotations omitted).

[61]   Id. (internal quotations omitted).

[62]   See, e.g., Keister v. PPL Corp., No. 4:13-CV-00118, 2016 WL 688031, at *8 (M.D. Pa. Feb. 19, 2016) (imposing approximately $116,000.00 in sanctions in a case involving a complaint that "lodged averments about evidence that turned out not to exist and that were wholly contradicted" by the evidence and that also "loft[ed] these unsubstantiated averments at precisely the most problematic junctures, making dismissal . . . infeasible").

spuriousness and thereby induce further meritless litigation. As such, I have reviewed the pertinent exhibits, including the relevant board meeting transcripts, and although unnecessary to my ultimate determination, believe consideration of such documents and the reasonable justifications they reveal is wholly appropriate at this stage.[63]

Finally, turning to the issue of futility of amendment, as should be evident from the foregoing discussion, no amount of amendment or supplementation of additional facts will ever be sufficient to right the fatal legal defect in Plaintiff's case theory here. No matter what number iteration of an amended complaint I review, exclusion of a member of the public from school grounds under the circumstances as they unfolded here simply will not give rise to a constitutional cause action. For that reason, Defendants' motion to dismiss must be granted with prejudice.

---

[63]   See ECF No. 8 Ex's. 1–4. See also Federal Rule of Civil Procedure 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

**B.     Further, the Defendants Enjoy Qualified Immunity as to Plaintiff's Constitutional Claims.**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[64] "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[65] "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."[66] However, "qualified immunity is inapplicable to a state law cause

---

[64]   Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982).

[65]   Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009).

[66]   Id. (internal quotation marks omitted).

of action."[67] Thus, as should be noted for our purposes here, "[a] qualified

immunity analysis does not apply to a pendent state claim."[68]

"Decision of this purely legal question permits courts to

expeditiously weed out suits which fail the test without requiring a

defendant who rightly claims qualified immunity to engage in expensive

and time consuming preparation to defend the suit on its merits."[69] "One

of the purposes of immunity, absolute or qualified, is to spare a defendant

not only unwarranted liability, but unwarranted demands customarily

imposed upon those defending a long drawn out lawsuit."[70]"Indeed," the

Supreme Court of the United States has "made clear that the 'driving force'

behind creation of the qualified immunity doctrine was a desire to ensure

that 'insubstantial claims' against government officials [will] be resolved

prior to discovery."[71] "Accordingly, we repeatedly have stressed the

---

[67] <u>Miller v. New Jersey</u>, 144 F. App'x 926, 929 (3d Cir. 2005).

[68] <u>Id.</u>

[69] <u>Siegert v. Gilley</u>, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793, 114 L. Ed. 2d 277 (1991).

[70] <u>Id.</u>

[71] <u>Pearson</u>, 555 U.S. at 231 (second internal quotation marks omitted).

importance of resolving immunity questions at the earliest possible stage in litigation."[72]

In Saucier v. Katz, the Supreme Court established a two-step process for resolving claims of qualified immunity: "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."[73] "For the official to have 'fair warning' that his or her actions violate a person's rights, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[74]

"This two-step procedure, the Saucier Court reasoned, is necessary to support the Constitution's elaboration from case to case and to prevent

---

[72] Id. at 232 (internal quotation marks omitted).

[73] Pearson, 555 U.S. at 232 (citing Saucier v. Katz, 534 U.S. 194, 201 (2001)).

[74] Burns v. PA Dep't of Corr., 642 F.3d 163, 176 (3d Cir. 2011) (internal quotation marks and citations omitted).

constitutional stagnation."[75] "The law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case."[76]

In <u>Pearson v. Callahan</u>, Justice Samuel A. Alito, Jr., writing for the Supreme Court, explained that "while the sequence set forth [in <u>Saucier</u>] is often appropriate, it should no longer be regarded as mandatory."[77] "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[78]

As applied to this case, the analysis in Part III.A made clear that Plaintiff's constitutional rights had not been violated. Nevertheless, and for the sake of completeness, I would also hold that the Defendants are

---

[75]   <u>Pearson</u>, 555 U.S. at 232 (quoting <u>Saucier</u>, 533 U.S. at 201).

[76]   <u>Pearson</u>, 555 U.S. at 232 (quoting <u>Saucier</u>, 533 U.S. at 201).

[77]   555 U.S. at 236.

[78]   <u>Id.</u>

entitled to qualified immunity as to Plaintiff's federal claims, because

Defendants would have had no "fair warning" that the allegedly violated

rights were "sufficiently clear," even supposing such rights existed.

For the sake of argument, Defendants themselves point to the

November 6, 2015 decision issued by the Honorable Robert D. Mariani of

this Court in <u>Barna v. Board of School Directors of the Panther Valley

School District</u>.[79] In <u>Barna</u>, the court addressed a permanent ban from

school board meetings, a targeted punishment sufficiently distinct from

that of the generalized exclusion of Plaintiff here from the District's

facilities. Defendants adequately point out that the permanency of such a

ban has not been plausibly alleged here.[80] Moreover, nothing about the ban

---

[79]  143 F. Supp. 3d 205, 207 (M.D. Pa. 2015).

[80]  For that matter, Defendants would be respectfully advised to consider that courts, in light of the foregoing precedents, are more likely to react amenably to narrowly tailored bans that state with particularity the justifications for such a ban, the temporal and geographic scope of such bans, and permit the banned individual, if appropriate and feasible, to engage in First Amendment activity, such as public school board comments, in meaningful ways through direct, live involvement or indirect, previously submitted statements. Such clarification is especially helpful in cases where an individual's alleged wrongdoing relates to a certain aspect of the school district's operation, such

here appears in any way specifically targeted to constrain the Plaintiff's

First Amendment rights of speech and assembly. He is excluded from all

district property, regardless as a spectator, speaker, coach, etc.

Lastly, as a factual matter, Plaintiff's removal from district facilities

occurred as a reasonable consequence of alleged wrongdoing involving the

District's high school football team and Plaintiff's purported participation

in a related recruiting scandal. Whether such allegations were legitimate is

not for this Court to decide. However, this background does provide

sufficient factual support to discern a rational connection between the

District's responsibility of ensuring the wellbeing of its pupils and its

ultimate decision to institute the facilities ban as against Plaintiff. In other

words, as in <u>Henley</u>, Plaintiff has pled no evidence that Defendants'

decision was based upon an invidious classification, rather than on a

reasonable one.

The extreme circumstances implicated in the <u>Barna</u> litigation, which

punishment was specifically aimed at limiting First Amendment rights,

_____

as athletics or any other particular segment, rather than, for example,
consistent belligerence or disorderly conduct at board meetings.

must properly be categorized so that it may accord with such precedential and highly persuasive decisions by this circuit and other courts in <u>Cole</u>, <u>Lovern</u>, and <u>Henley</u>—decisions that do not appear to have been considered in <u>Barna</u>. In my view, the salient legal distinction is as follows: in the school district setting, targeted First-Amendment retaliation, as evidenced in <u>Barna</u>, is distinguishable from generalized facilities ban cases reasonably aimed to secure public welfare and ensure pupil safety, as employed here and in the antecedent precedential decisions. Such a distinction flows from the school district's broad discretion to regulate its day-to-day activities and to ensure the wellbeing of its constituents as it sees fit, a discretion that judges should resist persistently disturbing where such intrusion is not constitutionally warranted.[81]

---

[81]   This Court does not mean to imply that a targeted ban on attendance at school board meetings will never be appropriate. To the contrary, in cases involving persistent disorderly or unlawful conduct at board meetings, such a ban is likely appropriate. The reality is, however, that a ban specifically targeted at limiting First Amendment rights requires a more narrowly tailored implementation and a more explicit justification than does a rationally-based, generalized facilities ban aimed at securing the welfare of a school district's pupils and not at curtailing First Amendment rights.

Even more problematic for Plaintiff here, however, Judge Mariani explained that although "the permanent ban imposed by Defendants upon Barna prohibiting him from attending public school board meetings . . . and from entering upon the property of the School District violates Barna's free speech rights under the First Amendment, . . . Barna's constitutional right to be free of a permanent ban on attending and speaking at School Board meetings was not clearly established at the time of the events which gave rise to this suit and that accordingly, the Defendants [were] entitled to qualified immunity."[82]

Therefore, even assuming applicability of the <u>Barna</u> decision here, because the events in this case preceded issuance of that opinion, <u>Barna</u> should not, and did not, influence my determination as to the applicability of qualified immunity here.  Essentially, even assuming existence of such a right, which is a pretty broad assumption for the reasons already stated, that hypothetical right was not clearly established before Judge Mariani issued <u>Barna</u>. Accordingly and as mandated by the foregoing analysis, the

---

[82]  <u>Id.</u>

complaint should be dismissed with prejudice for the second, independent

reason that the Defendants enjoy qualified immunity as to Plaintiff's

constitutional claims.

### C.    The Defendants Also Enjoy Absolute Immunity as to Plaintiff's State Law Claims.

Similar to the previous conclusions reached in section III.B as to the

applicability of qualified immunity to Plaintiff's constitutional claims, I

now also conclude that the Defendants are entitled to absolute immunity

for Plaintiff's state law claims.

The Political Subdivision Tort Claims Act grants to municipal

agencies immunity from liability for all state law tort claims.[83] The Act

provides that "no local agency shall be liable for any damages on account

of any injury to a person or property caused by any act of the local agency

or an employee thereof or any other person."[84] A school district and its

---

[83]    42 Pa.C.S.A. § 8541 et. seq. See also Smith v. Sch. Dist. of Philadelphia, 112 F. Supp. 2d 417, 424 (E.D. Pa. 2000) (DuBois, J.); Martin v. City of Philadelphia, et al., No. 99–543, 2000 WL 1052150 (E.D.Pa. July 24, 2000); Wakshul v. City of Philadelphia, 998 F.Supp. 585 (E.D.Pa.1998).

[84]    42 Pa.C.S.A. § 8541.

board of education are local agencies within the meaning of the Act.[85] As

such, Defendants here are immune from Plaintiff's state law allegations.

"Pennsylvania common law recognizes the doctrine of absolute

immunity for 'high public officials.'"[86] "Absolute privilege, as its name

implies, is unlimited, and exempts a high public official from all civil suits

for damages arising out of false defamatory statements and even from

statements or actions motivated by malice, provided the statements are

made or the actions are taken in the course of the official's duties or

powers and within the scope of his authority, or as it is sometimes

expressed, within his jurisdiction."[87]

Defendants correctly observe that "[i]t is well established that school

board members are considered 'high public officials' and are entitled to

absolute immunity from state law suits when acting in their official

---

[85]  Smith, 112 F. Supp. 2d at 424; Kessler v. Monsour et al., 865 F.Supp. 234, 241
(M.D.Pa.1994) (School District is municipal entity); Carlino v. Gloucester City
High School, et al., 57 F.Supp.2d 1, 33 (D.N.J.1999).

[86]  Smith, 112 F. Supp. 2d at (quoting Lindner v. Mollan, 544 Pa. 487, 490–91, 677
A.2d 1194, 1195–96 (1996)).

[87]  Matson v. Margiotti, 371 Pa. 188, 193-94, 88 A.2d 892, 895 (1952).

capacity."[88] As recently as March 16, 2015, this Court, in <u>Cutler v. Bellefonte Area School District</u>, granted a school board member's motion to dismiss a defamation suit on the basis that the board member was entitled to absolute immunity.[89] In <u>Cutler</u>, I reiterated the principle that "[i]n Pennsylvania, high public officials are exempted from 'all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers.'"[90]

"To determine if an individual defendant qualifies as a high public official for purposes of absolute immunity, the court must consider, on a case-by-case basis, 'the nature of [the official's] duties, the importance of his office, and particularly whether . . . he has policy-making functions.'"[91]

---

[88]   ECF No. 8 at 17.

[89]   97 F. Supp. 3d 586, 587 (M.D. Pa. 2015).

[90]   <u>Id.</u> at 588 (<u>Smith v. Borough of Dunmore</u>, 633 F.3d 176, 181 (3d Cir.2011) (Jordan, J.).

[91]   <u>Cutler</u>, 97 F. Supp. 3d at 589 (quoting <u>Behne v. Halstead</u>, No. 13–0056, 2014 WL 1689950 at *26 (M.D.Pa. April 29, 2014) (Rambo, J.)).

"Applying these factors to public school district officials, the late

Honorable James F. McClure, Jr., of this Court, stated that superintendents

and school board members 'entrusted with a policymaking role for the

School District, are high public officials entitled to absolute immunity from

state law suits when acting in their official capacity.'"[92]

"This entitlement to absolute immunity is unlimited for claims of

defamation so long as the statements made by the official are made in the

course of his official duties and within the scope of his authority."[93]   The

defense of absolute immunity applies to claims of intentional infliction of

emotional distress, slander, and false light invasion of privacy.[94] "While

the initial determination of absolute immunity is a question of law, the

---

[92]   Cutler, 97 F. Supp. 3d at 589 (quoting Zugarek v. S. Tioga Sch. Dist., 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002)). See also Kohn v. School Dist. of City of Harrisburg, 817 F.Supp.2d 487, 512 (M.D.Pa.2011) (Caldwell, J.); Poteat v. Harrisburg School Dist., 33 F.Supp.2d 384, 396 (M.D.Pa.1999) (Caldwell, J.).

[93]   Cutler, 97 F. Supp. 3d at 589.

[94]   See, e.g., Smith, 112 F. Supp. 2d at 424 (intentional infliction of emotional distress); Lindner, 544 Pa. at 495 (slander); McErlean v. Borough of Darby, 157 F. Supp. 2d 441, 445 (E.D. Pa. 2001) (false light invasion of privacy).

question of whether the privilege has been abused is to be resolved by a jury 'unless the facts are such that but one conclusion can be drawn.'"[95]

I agree with the Defendants that Plaintiff's complaint plainly sets forth that the individual Defendants served as directors on the District's school board when the underlying events transpired. Moreover, the complaint is devoid of any allegation suggesting that the Defendants in any way exceeded the scope of their roles as school directors. Quite the contrary, Plaintiff's complaint itself sets forth that the decision to ban him from District facilities, as well as that decision's affirmance, both transpired by way of official voting procedures during the course of two school board meetings.

Likewise, there are simply no allegations in Plaintiff's complaint that the disputed comments were made separate or apart from the elected board members' responsibility of steering official District policy. Instead, a fair reading of Plaintiff's complaint implies the opposite: Defendants actions and statements were part and parcel of significant district policy

---

[95] <u>Cutler</u>, 97 F. Supp. 3d at 589 (quoting <u>Montgomery v. City of Philadelphia</u>, 392 Pa. 178, 184 fn. 4, 140 A.2d 100 (1958)).

decisions. Out of concerns with political accountability and separation of

powers, the law plainly affords them that right. Absolute immunity

thereafter requires this Court to refrain from disturbing their judgment.

### D.     Plaintiff Has Failed to Plausibly State a Claim for Intentional Inflection of Emotional Distress.

In addition to the Defendants enjoying absolute immunity as to

Plaintiff's state law claims, those state law claims also fail substantively.

"When a district court's jurisdiction is predicated on diversity of the

parties, or when the court hears a state-law claim based on its

supplemental jurisdiction, as we will assume it did here, the court must

determine whether, under Erie Railroad Co. v. Tompkins, a matter is

substantive or procedural."[96] Then, "if the matter is substantive, the court

must apply the substantive law of the forum state."[97] The substantive law

of the state of Pennsylvania therefore applies to this action.

Under Pennsylvania law, "[t]o state a claim for intentional infliction

of emotional distress, a plaintiff must plead that the defendant's conduct:

---

[96]  Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008) (Barry, J.) (citing 304 U.S. 64 (1938)).

[97]  Chin, 538 F.3d at 278.

(1) was intentional or reckless; (2) was extreme and outrageous;

(3) actually caused the distress; and (4) caused distress that was severe."[98]

"A plaintiff seeking to establish intentional infliction of emotional distress

must also support his claim with competent medical evidence, because it is

unwise and unnecessary to permit recovery to be predicated on an

inference based on the defendant's outrageousness without expert medical

confirmation that the plaintiff actually suffered the claimed distress."[99]

"In order to state a cognizable claim, the conduct must be so extreme

in nature as to go beyond all possible bounds of decency such that it

would be regarded as utterly intolerable to civilized society."[100]

"Generally, the case must be one with respect to which the recitation of

facts to an average member of the community would arouse his

resentment against the actor, and lead him to exclaim, 'Outrageous!'"[101]

---

[98]  Regan v. Twp. of Lower Merion, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999).

[99]  Lawson v. Pennsylvania SPCA, 124 F. Supp. 3d 394, 409 (E.D. Pa. 2015) (internal quotation marks omitted).

[100]  Id. (internal quotation marks omitted).

[101]  Robinson, 246 F. Supp. 2d at 444 (internal quotation marks omitted).

"The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."[102] "[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind."[103] Thus, it has been said that "[t]here is no occasion for the law to intervene in every case where someone's feelings are hurt."[104] "Perceived unkindness has no remedy at law."[105]

Accordingly, a claim for intentional infliction of emotional distress must be dismissed where "[t]he defendants' alleged conduct is simply not sufficiently outrageous to sustain a claim of intentional infliction of emotional distress."[106] As such, "[w]ith regard to the element of outrageousness, it is for the court to determine in the first instance whether

---

[102] Hunger v. Grand Cent. Sanitation, 447 Pa. Super. Ct. 575, 584, 670 A.2d 173, 177 (1996).

[103] Id.

[104] Id.

[105] Zaloga v. Borough of Moosic, No. 3:10-CV-2604, 2015 WL 3755003, at *11 (M.D. Pa. June 16, 2015).

[106] See Goodson v. Kardashian, 413 F. App'x 417, 418 (3d Cir. 2011).

the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery."[107]

Remaining faithful to the above legal rules, Plaintiff's claim for intentional infliction of emotional distress must be dismissed. Plaintiff has advanced such limited factual allegations, none of which, even when considered cumulatively, plausibly gives rise to an inference of outrageous conduct on the part of the individual Defendants.

For support, consider the decision Barrett v. Board of Education. of Johnston County, North Carolina in which the United States District Court for the Eastern District of North Carolina dismissed an intentional infliction of emotional distress claim brought against Johnson County school board members by a parent residing in the school district who was

---

[107] Johnson v. Caparelli, 425 Pa. Super. Ct. 404, 412, 625 A.2d 668, 671 (1993). See, e.g., Snyder v. Specialty Glass Products, Inc., 658 A.2d 366 (Pa. Super. Ct. 1995) (summary judgment granted in favor of defendant because plaintiff employee's suffering verbal abuse and demotion after arriving late to work was not outrageous as a matter of law); Ruder v. Pequea Valley Sch. Dist., 790 F.Supp.2d 377, 398 (E.D. Pa. 2011) (motion to dismiss granted because defendant's failure to provide the plaintiff with medical leave and benefits, and its subsequent termination of the plaintiff, was not outrageous as a matter of law).

banned by the board from certain district property.[108] In dismissing the
intentional infliction of emotional distress claim, the district court noted
that "there is no parental right of access to [the] property and no
reasonable person could view banning a parent from [the] property as
violating of any rights."[109]

In another case, Pittman v. Boyd Biloxi, LLC, the United States
Court of Appeals for the Fifth Circuit affirmed the district court's grant of
summary judgment in favor of a defendant casino on an intentional
infliction of emotional distress claim, where the casino's security officers
arrested for trespassing a patron who had previously been banned from
the casino's premises.[110]

Thus, even assuming the ban suffered by Plaintiff in this case was
unjustified, he has alleged no facts concerning the pertinent school board
meetings or the ultimate imposition of the ban that even come close to

---

[108]   13 F. Supp. 3d 502, 518 (E.D.N.C.), aff'd, 590 F. App'x 208 (4th Cir. 2014).

[109]   Id.

[110]   566 F. App'x 344, 348 (5th Cir. 2014).

plausibly suggesting that the individual Defendants' conduct was outrageous as a matter of law. To hold otherwise would open thousands of commonplace school board determinations to second guessing through the judicial system. Suffice it to say, that would be an ill-advised outcome. For the foregoing reasons, Plaintiff's intentional inflection of emotional distress claim is dismissed with prejudice.

### E.   Plaintiff Has Failed to Plausibly State a Claim for Slander.

Count VI alleges a claim for slander against Defendant Kovalewski specifically. Because this claim is also unsupported by fact or law, it too must be dismissed.

Under Pennsylvania law, "[t]o establish a prima facie claim of slander, a plaintiff must establish: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be

applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion."[111]

"However, if the communication in question 'ascribes to another conduct, character, or a condition that would adversely affect his fitness for the proper conduct of his business, trade, or profession, [then it] is defamatory per se' and special harm need not be proved."[112] The same is true of <u>per se</u> slanderous statements imputing commission of a criminal offense.[113] "When presented with a purportedly slanderous communication, '[i]t is the function of the court to determine whether the challenged [communication] is capable of defamatory meaning.'"[114]

A statement constitutes slander per se as an accusation of business misconduct when it describes "conduct, characteristics or a condition that would adversely affect his fitness for the proper conduct of his lawful

---

[111] <u>Kovarik v. Downey</u>, No. CIV.A 1:09-CV-1646, 2010 WL 2294523, at *2 (M.D. Pa. June 4, 2010) (Conner, J.) (citing  42 PA. Cons. Stat. § 8343).

[112] <u>Kovarik</u>, 2010 WL 2294523, at *2 (quoting <u>Pelagatti v. Cohen</u>, 370 Pa. Super. 422, 536 A.2d 1337, 1345 (Pa. Super. Ct. 1987)).

[113] Restatement (Second) of Torts § 570 (1977).

[114] <u>Kovarik</u>, 2010 WL 2294523, at *2 (quoting <u>Tucker v. Phila. Daily News</u>, 577 Pa. 598, 848 A.2d 113, 124 (Pa. 2004)).

business, trade or profession, or his public or private office."[115] "The

imputation must be of such a character as to disparage the other in the

pursuit of his business, trade, profession or office or tend to harm him in

it."[116] Thus, to slander a person in a business or professional capacity, a

statement must be "peculiarly harmful to one engaged in [that] business or

profession. Disparagement of a general character, equally discreditable to

all persons, in not enough."[117]

Slander <u>per se</u> involving allegations of criminal conduct requires

that the alleged offense, if actually committed, be "punishable by

imprisonment in a state or federal institution" or "regarded by public

opinion as involving moral turpitude."[118] "It is enough that the language

used imputes to the other the criminal offense. On the other hand, it is not

---

[115]   Restatement (Second) of Torts § 573 (1977).

[116]   <u>Id.</u> at Comment c. <u>Compare</u> Illustration 1: "In the presence of A, B tells C, a bricklayer, that he is a hypocrite. B is not liable to C without proof of special harm." <u>with</u> Illustration 4: "A, says to B that C, a lawyer, is ignorant and unqualified to practice law. A is subject to liability to C without proof of special harm."

[117]   <u>Id.</u> at Comment e.

[118]   Restatement (Second) of Torts § 571.

enough merely to suggest that another is capable of committing a crime or

that he would commit it if sufficient opportunity were presented. Neither

is it sufficient to charge another with a criminal intention or design, if no

criminal act is charged."[119]

As a matter of substantive law, Plaintiff has failed to allege sufficient

facts plausibly showing that the contested comments satisfy either the

professional conduct or criminal acts slander <u>per se</u> categories. Recall that

the underlying comments allegedly made by the Defendant are as follows:

1.    "[He] may or may not be out there playing Jerry Maguire."[120]

2.    "[He] maybe [<u>sic</u>] using kids as pawns."[121]

3.    "It reminded me in a different way of Kids for Cash, and I
have no tolerance for that."[122]

4.    "He's a shadowy figure."[123]

As an initial matter, none of these comments pertain to business

misconduct. More specifically, none of these statements signify conduct

---

[119]  <u>Id.</u> at Comment c.

[120]  ECF No. 1 at 6 ¶ 27.

[121]  <u>Id.</u> at ¶ 28.

[122]  <u>Id.</u> at ¶ 29.

[123]  <u>Id.</u> at 7 ¶ 37.

unbefitting of an insurance provider. Perhaps the closest comment would be the opinion that Plaintiff was "a shadowy figure." Clearly that is insufficient to trigger the per se rule, however, as such a descriptor is a general detractor that could apply to every profession and not solely to the one in question. Because the comments are not connected in any manner to Plaintiff's particular business or profession, the only remaining per se category to consider is that of criminal implication.

Plaintiff contends that the comment concerning a likeness to the "Kids for Cash" scandal establishes per se criminal implication. I disagree. Though Plaintiff correctly notes that "Kids for Cash" involved a kickback scheme by certain judges of the Court of Common Pleas of Luzerne County, he is incorrect that the given comment is sufficient to trigger the per se rule. First, it is evident that Defendant's comments state that Plaintiff's conduct "reminded [her] in a different way" of the Kids for Cash scandal. There is, however, a sharp distinction between statement of a generalized resemblance to nefarious character traits and that of an outright accusation or implication of criminal activity. Accordingly, in my

view, the Defendant's comments merely convey a sense that, based upon

her perception of the recruitment investigation, there existed certain

qualitative or surface-level similarities between Plaintiff's conduct and the

Kids for Cash scandal. Those similarities need not have been, and were not

clearly expressed by the Defendant to include, illegality. Rather, that

comment relays a sense of secretive, evasive, or less than forthright

conduct, "shadowy" behavior, as the Defendant termed it.

Under the standards this Court must apply, to label someone

dishonest or underhanded or to generally describe them as having

displayed such characteristics is not to accuse them as a matter of fact of

committing a felony. The reach of libelous, defamatory, or slanderous

liability cannot be so broad as to chill productive discourse. Accordingly,

Plaintiff's claim for slander must also be dismissed.

### F.     Plaintiff Has Failed to Plausibly State a Claim for False Light Invasion of Privacy.

Count VII alleges a claim for false light invasion of privacy against

Defendant Kovalewski. Because this claim is also unsupported by fact or

law, it must be dismissed.

To plausibly state a claim of false light invasion of privacy under

Pennsylvania law, a plaintiff must allege "(1) publicity, (2) given to private

facts, (3) which could be highly offensive to a reasonable person, and

(4) which are not of legitimate concern to the public."[124] That said, "the

contours of this tort remain amorphous."[125]

"A reasonable person understands, and takes into account, the

difference we have discussed above between a statement of fact and one of

opinion."[126] "[A] sincere statement of pure opinion is not an untrue

statement of material fact."[127] Consequently, "expressions of 'opinion' may

often imply an assertion of objective fact"[128]

---

[124] Wallace v. Media News Grp., Inc., 568 F. App'x 121, 127 (3d Cir. 2014) (citing Rush v. Philadelphia Newspapers, Inc., 1999 Pa. Super. 141, 732 A.2d 648 (1999)). See also Smith v. Borough of Dunmore, 633 F.3d 176, 182 (3d Cir. 2011) (Jordan, J.).

[125] In re Lansaw, 424 B.R. 193, 197 (Bankr. W.D. Pa. 2010).

[126] Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 135 S. Ct. 1318, 1328, 191 L. Ed. 2d 253 (2015) (Kagan, J.).

[127] Id. at 1327 (internal quotation marks omitted).

[128] Milkovich v. Lorain Journal Co., 497 U.S. 1, 18, 110 S. Ct. 2695, 2705, 111 L. Ed. 2d 1 (1990).

"The element of 'publicity' requires that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."[129] "While the intentional or negligent communication of defamatory matter to a single person (or to a newspaper) might constitute a 'publication' in the context of an action for defamation, that does not concern us here."[130] "The 'publicity' which we here examine requires that the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. Where a communication involving private facts reaches, or is sure to reach, the public, then publicity has been given to that party's private life."[131]

"In considering whether publicity is highly offensive, one must ask whether the plaintiff, as a reasonable man, would be justified in the eyes of

---

[129] Harris by Harris v. Easton Pub. Co., 335 Pa. Super. 141, 154, 483 A.2d 1377, 1384 (1984).

[130] Id. at 155 (internal citation omitted).

[131] Id.

the community in feeling seriously offended and aggrieved by the publicity."[132] "The plaintiff must also prove that the defendant either had knowledge of the falsity of the statements or acted in reckless disregard of the falsity of the statements. Mere negligence is insufficient."[133]

"[T]he element of falsity is met if the plaintiff alleges that the defendant knowingly or recklessly selectively printed or broadcast true statements or pictures in a manner which created a false impression."[134] "Significantly, unlike the law of defamation, false light invasion of privacy offers redress not merely for the publication of matters that are provably false, but also for those that, although true, are selectively publicized in a manner creating a false impression."[135]

---

[132] In re Lansaw, 424 B.R. at 198.

[133] Id.

[134] Larsen v. Philadelphia Newspapers, Inc., 375 Pa. Super. 66, 82–83, 543 A.2d 1181, 1189 (1988).

[135] Krajewski v. Gusoff, 2012 PA Super 166, 53 A.3d 793, 806 (2012) (internal citation omitted).

Relatedly, "a false light/invasion of privacy claim is not dependent on whether the publicized facts concern the private life of the plaintiffs."[136] Thus, "recovery in tort for the disclosure of public, as well as private, facts, even though they be true, is warranted to protect a claimant's right to be free from being placed in a false light and incurring the resultant mental suffering, shame or humiliation which may be caused by the discriminate publication of such facts."[137]

"The final element exempts from liability those facts which are of legitimate concern to the public, such as official court records open to public inspection."[138] "This also applies to persons who, voluntarily or involuntarily, have become public figures and may also apply to certain private facts relating to those public figures, such as the life history of one accused of a sensational crime, and even to the members of that person's family."[139]

---

[136]   In re Lansaw, 424 B.R. at 200.

[137]   Larsen, 375 Pa. Super at 82.

[138]   Harris by Harris, 335 Pa. Super. at 156 (internal citation omitted).

[139]   Id. (internal citations omitted).

Plaintiff's false light claim will be dismissed for several reasons.

First, the alleged statements are more appropriately construed as

Defendant Kovalewski's opinions, distinct from facts. The underlying

comments allegedly made by the Defendant are again as follows:

1.   "[He] may or may not be out there playing Jerry Maguire."[140]

2.   "[He] maybe [sic] using kids as pawns."[141]

3.   "It reminded me in a different way of Kids for Cash, and I have no tolerance for that."[142]

4.   "He's a shadowy figure."[143]

The Court reads each of those quotations as expressing the

Defendant's opinion as to Plaintiff's alleged conduct or at the very least,

implying exceedingly generalized and non-specific notions about

Plaintiff's conduct. At the outset, I note the evidently equivocal and

perception-based character of the comments as support.

---

[140]  ECF No. 1 at 6 ¶ 27.

[141]  Id. at ¶ 28.

[142]  Id. at ¶ 29.

[143]  Id. at 7 ¶ 37.

Moreover, Plaintiff has failed to allege any factual plausibly

supporting his contention that Defendant was aware that the underlying

statements were false (or true and intended to cast Plaintiff in a false light)

or that Defendant acted with reckless disregard in verbalizing the

statements. "To prevail on a claim of 'false light,' a plaintiff 'must show

that a highly offensive false statement was publicized by [defendants] with

knowledge or in reckless disregard of the falsity.'"[144] Plaintiff has proffered

no allegations suggesting that Defendant's comments were in any way

based on something more than her rationally-based perceptions or the

findings associated with the broader investigation into the District's

recruitment scandal.

Moreover, Plaintiff's false light claim should be dismissed because

the underlying statements speak to a matter of legitimate public concern.

In <u>Rush v. Philadelphia Newspapers, Inc.</u>, for example, the Pennsylvania

Superior Court determined that the false light invasion of privacy "cause

of action must fail" in a case about publicized statements involving official

---

[144]  <u>Taha v. Bucks Cty.</u>, 9 F. Supp. 3d 490, 493 (E.D. Pa. 2014) (quoting <u>Santillo v. Reedel</u>, 430 Pa. Super. 290, 295, 634 A.2d 264, 266 (1993)).

school board actions, the awarding of school district contracts, and the
appointment of school board members in the Philadelphia School
District.[145] The Superior Court wrote that "[i]mportantly, this is a matter of
legitimate concern to the general public."

The remarks in <u>Rush</u> were a matter of public concern because they
were made in connection with districtwide efforts to eliminate patronage
and reduce a significant budget deficit.[146] "It cannot be gainsaid," the
Superior Court wrote, "that the general public has an interest in and a
right to know about their public school system."[147] Therefore, it concluded
that summary judgment was appropriately granted as to the false light
invasion of privacy claim.[148]

As in <u>Rush</u>, Defendant Kovalewski's statements spoke to the
appropriate functioning of the District, the bases for her and the other
board members having taken official action, the direction and vitality of

---

[145]   1999 PA Super 141, 732 A.2d 648, 650 (1999).

[146]   1999 PA Super 141, ¶ 16, 732 A.2d 648, 654.

[147]   <u>Id.</u>

[148]   <u>Id.</u>

the District's football program, as well as the welfare of student-athletes residing within or around the District's geographic bounds. Consistent with the foregoing reasons, Plaintiff's false light claim is dismissed.

### G. Plaintiff's Complaint Is Dismissed with Prejudice because Further Amendment Would Be Futile.

Federal Rule of Civil Procedure 15 sets forth the mechanisms for amending a pleading prior to trial. Section 15(a)(1) applies to amendments as a matter of course. Amendment as a matter of course is inapplicable here, because Plaintiff elected not to make such an amendment within the two time periods provided for in that section. Section 15(a)(2), entitled "Other Amendments," explains that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

The Third Circuit has "previously discussed when a court may deny leave to amend under Rule 15(a)(2)."[149] In <u>Shane v. Faver</u>, for example, then Circuit Judge Samuel A. Alito, Jr. stated that "[a]mong the grounds that could justify a denial of leave to amend are undue delay, bad faith,

---

[149] <u>Holst v. Oxman</u>, 290 F. App'x 508, 510 (3d Cir. 2008).

dilatory motive, prejudice, and futility."[150] "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."[151] "In assessing futility, the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."[152]

"Moreover, substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend."[153] "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted."[154] "Specifically, we have considered whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories."[155]

---

[150] 213 F.3d 113, 115 (3d Cir. 2000) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) (Alito, J.).

[151] Shane, 213 F.3d at 115.

[152] Id.

[153] Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).

[154] Id.

[155] Id.

"The decision to grant or deny leave to amend a complaint is committed to the sound discretion of the district court."[156] "Factors the trial court may appropriately consider in denying a motion to amend include undue delay, undue prejudice to the opposing party, and futility of amendment."[157] For instance, "if the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend."[158]

As previously outlined, Plaintiff's complaint suffers from a panoply of legal defects that further factual supplementation simply cannot rectify. As an initial matter, Plaintiff failed to plausibly plead substantive constitutional or state law violations. Subsequently, he advanced no argument as to the inapplicability of qualified or absolute immunity.

---

[156] Coventry v. U.S. Steel Corp., 856 F.2d 514, 518 (3d Cir. 1988).

[157] Averbach v. Rival Mfg. Co., 879 F.2d 1196, 1203 (3d Cir. 1989) (quoting Foman, 371 U.S. at 182.

[158] Ross v. Jolly, 151 F.R.D. 562, 565 (E.D. Pa. 1993) (citing 6 Wright, Miller, & Kane, Federal Practice & Procedure: Civil 2d § 1487).  See also Vosgerichian v. Commodore Int'l Ltd., No. Civ. A. 92-CV-4867, 1998 WL 966026, at * 3 (E.D. Pa. Nov 6, 1998) aff'd sub nom Vosgerichian v. Commodore Int'l, 191 F.3d 446 (3d Cir. 1999).

For these reasons, I find that amendment would be futile and would prejudice Defendants. At this point, it is evident that, due to the legal defects present in Plaintiff's case theory, further amendment would still leave the complaint deficient as a matter of law. Relatedly, in light of the case's evident lack of merit, requiring counsel for the Defendants to brief for second, third, or fourth iterations, the very legal questions that have quite thoroughly briefed the first time around would unduly prejudice their clients. Accordingly, further amendment will not be permitted.

## IV.    CONCLUSION

Consistent with the foregoing reasoning, Defendants' Motion to Dismiss is granted. Because further amendment would be futile, the motion is granted with prejudice.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge